**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:

DHALIWALVENTURES INC,

     Plaintiff,

v.

FEDERATED MUTUAL INSURANCE COMPANY.

     Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, Dhaliwal Ventures Inc ("Dhaliwal" or "Plaintiff"), through its attorneys, Daly & Black, P.C. and Leventhal Sar LLC, respectfully submits the following Complaint and Jury Demand:

**INTRODUCTION, PARTIES, JURISDICTION, AND VENUE**

1.    This is a first party insurance case related to property damage sustained to a commercial property as a result of two hailstorms that occurred during the Summer of 2018.

2.    Dhaliwal is the owner of the subject property, which is located at 1101-055 S. Santa Fe Ave., Fountain, CO 80817 (the "Property").

3.    The Property includes a truck stop, which has a gas station/convenience store, awnings with gas pumps, a restaurant, and various smaller structures, as pictured below:



4.      Dhaliwal is a Colorado Corporation with a principal office street address of 103 South Santa Fe Ave, Fountain, CO 80817.

5.      The Property is also known as the Tomahawk Travel Center.

6.      At all relevant times, Dhaliwal is and was the beneficiary of a commercial property insurance policy covering the Property issued by Federated (the "Policy"). The Policy number is HBD 9279972.

7.      Defendant, Federated Mutual Insurance Company ("Federated" or "Defendant") is a Minnesota corporation doing business in Colorado, and is listed on the Secretary of State website, as of December 7, 2020, as being "Delinquent." Federated may be served by serving its registered agent, which is the Division of Insurance, 1560 Broadway, Denver, CO 80202.

8.      Dhaliwal is a citizen of the State of Colorado.

9.      Federated is not a citizen of the State of Colorado.

10.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     Venue is proper in this Court because, among other things, the causes of action arise out of an insurance policy issued in Colorado and governed by Colorado law.

## GENERAL ALLEGATIONS

<u>The Policy</u>

12.     Plaintiff incorporates all other paragraphs as if fully set forth herein.

13.     The Policy provides coverage for direct physical loss or damage to the Property caused or resulting from specified causes of loss, including hail.

14.     The Policy provides coverage for damage to the Property on a replacement cost basis.

15.     During the Policy period from October 25, 2017, to October 25, 2018, the limit of such replacement cost coverage was $3,961,000 and the deductible was $5,000.

16.     There is also a "Retained Amount" endorsement, under which the insurer must "reimburse [Federated] for up to the first $25,000 of that payment (the retained amount)." The Policy also states, "[t]he most 'you' are required to reimburse 'us' under this Endorsement during any one policy period, regardless of the number of 'losses', (sic) is $25,000 (the Policy Period Aggregate)."

17.     Pursuant to the Replacement Cost provision of the Policy, among other things, Federated is required to pay for the cost to repair or replace damage to the Property, including from hail, wind, and rainstorms, with other property of comparable material and quality and used for the same purpose, up to the coverage limit, without deduction for depreciation.

18.     Additionally, the Policy provides coverage for increased costs incurred to comply with ordinances or laws in the course of repair, rebuilding, or replacement of damaged parts of the Property, subject to a $100,000 limit.

**The Hailstorms**

19.     Several severe hailstorms struck the Fountain, Colorado area during the Policy period. Fountain, Colorado, which is where the Property is situated, is approximately fourteen miles south of Colorado Springs, Colorado.

20.     On or about June 12, 2018, a hail, wind, and rainstorm struck the Fountain, Colorado area. The storm was severe. The Colorado Springs Gazette reported as follows: "[a]reas near Colorado Springs see worst overnight hail storm in more than 20 years."

21.     On or about August 6, 2018, a more severe storm (relative to the June storm referenced above), including hail, wind, and rain, struck the Fountain, Colorado area. According to the Colorado Springs Gazette, hail reportedly *as big as softballs* fell causing damage around the Colorado Springs area – "among the worst in history at the Cheyenne Mountain Zoo and in Fountain."

22.     Below is a picture of the softball-sized hail from the Denver Post:



23.    During the course of these storms, the Property was severely damaged by hail and wind. The damage included damage to the Property's structures, including the roofing systems that resulted in interior leaking to the gas station and the restaurant, damage to the buildings' siding, damage to the HVAC systems, and damage to signage.

24.    Meteorological reports indicated that the maximum hail size at the site on the dates of loss was 2.3" diameter on June 12, 2018, and 2.2" diameter on August 6, 2018.

25.    Prior to the storms, the Property had recently replaced the interior roof tiles in the restaurant, and it did not have damage to the HVAC systems or signage. Following the storms there was visible damage to the Property, including to the siding and roof.

26.     Post-storm rainfall resulted in significant water penetration to the interior of the buildings on the Property.

**Plaintiff Timely Filed Claims with Defendant**

27.     Dhaliwal timely filed a claim after the June storm.

28.     Dhaliwal timely filed a claim after the August storm.

29.     The June 12, 2018, claim was assigned claim number 446798 ("June Claim").

30.     The August 6, 2018, storm was assigned claim number 471862 ("August Claim").

31.     The June Claim and the August Claim may be hereinafter referred to as "the Claims."

32.     Federated assigned the June Claim to an adjuster, Chris Hillbrand.

33.     Federated also assigned the June Claim to Ascent Claim Service, Inc. ("Ascent"), a third-party claim adjusting company.

34.     Dhaliwal retained a contractor, CJ Restoration ("CJ"), to value the damage caused by the storms. CJ estimated and took pictures after the first and the second storms.

**Defendant's First Inspection**

35.     Ascent's adjuster, Ron Todd, inspected the Property on or about August 1, 2018, related to the June storm.

**Defendant's First Estimate: $104,859.14 RCV for June Claim**

36.     On or about August 12, 2018, Ascent prepared an Xactimate estimate indicating the following valuation of the Property's damage related to the June storm:

- RCV: $104,859.14

- ACV: $55,249.14.

37.     On September 4, 2018, Federated sent a letter to Plaintiff stating that the covered

loss amount related to the June storm was **$51,270.52**. The letter also incorrectly stated the date of

loss as being on "June 14, 2018." The pertinent portion of the letter is pasted below:

| Loss Number: | 446798 - 1 |
| Named Insured: | DHALIWAL VENTURES INC |
| Date of Loss: | 06/14/2018 |
| Location of Loss: | 1101-1105 S SANTA FE AVE FOUNTAIN, CO |
| Loss Description: | Hail damage to insured roof. |
| Retained Amount: | $ 25,000.00 |
| Covered Loss Amount: | $ 51,270.52 |
| Deductible Amount Applied: | $ 5,000.00 |
| Retention Amount Applied: | $ 25,000.00 |

38.     Federated also assigned the August Claim to Mr. Hillbrand and Ascent.

**Defendant's Second Inspection**

39.     The same adjuster from Ascent who inspected the Property related to the June

Claim, Mr. Todd, inspected the Property, once again, this time related to the August Claim, on or

about December 13, 2018.

**Defendant's Second Estimate: $23,118.07 RCV for August Claim**

40.     Around December 2018, Federated and/or its agents, hired David Long, with Roof

Technical Services, Inc., to conduct a "Roof Sample Analyses Report," related to the August

Claim.

41.     On or about January 2, 2019, Mr. Long conducted a test of only "two roof

membrane samples."

42.     Despite softball-size hail pummeling the Property, Mr. Long concluded that "[n]o

points impact fractures were present on the plies of the two roof membrane samples."

43.     Relying on this conclusion, on or about December 13, 2018, Ascent prepared an Xactimate estimate indicating the following valuation of Property damage related to the August Claim:

- RCV: $23,118.07

- ACV: $14,682.52.

44.     Despite the August storm being historical in nature insofar as the severity, including the large size of the hail, Defendant determined that the August storm only caused approximately $20,000 in additional damage.

45.     This approximately $20,000 in damage was spread throughout the entire Property, including a convenience store, gas station and its large, specialized awnings able to fit 18-wheelers, a restaurant, and other buildings, each with expensive, commercial roofing systems and HVAC units.

46.     On or about February 8, 2019, Federated and/or its agents sent Plaintiff an email purporting to summarize the Claims, stating, in pertinent part:

> [W]e are issuing additional payments today for the supplemental damages (related to the re-inspection).
>
> . . .
>
> The re-inspection did find some minor damages to the buildings that were not from the first storm (different wind directions) and we have an estimate prepared for that file and a payment and separate paper work (sic) will be sent for that claim.
>
> Your contractor asked that we re-inspect the premises for additional damages and specifically noted that they thought that the built up (sic) roof sections with gravel ballast also suffered damage form (sic) the hail storms. Our initial inspection did not locate any damage to these roof sections so we asked a consultant. . . Michael Hayes with JS Held LLC attended the re-inspection and had your roofer provide samples of the built up roof felts. The samples were sent to lab for delamination and examination and the test results found no fractures to the felts indicating that they were not damaged by hail. We have not included any repair amounts for the

built up (sic) roof sections in the revised estimate. We have attached a copy of the lab report findings for your review.

Ron did find some supplemental damages not included in his prior estimate and he has provided us with his revised estimate which . . . modifies a few minor items from the prior estimate and then adds additional damages discovered upon the re-inspection.

We also had an HVAC consultant inspect your HVAC units and they have prepared an estimate to repair/replace the damaged units (described in averments 44-52, *infra*). . . .

Your contractor also pointed out interior water damages inside both buildings. Our initial and re-inspection did not find any storm related openings. . . your policy for possible coverage for the interior damages and determined that your policy does not cover interior water damages from wear and deterioration. . . .

We are still waiting for your contractor, KTK Canopies, to provide estimates for the hail damaged canopies.

**August Claim: Defendant's "Statement As To Full Cost Of Repair Or Replacement"**

47.     On or about February 8, 2019, Federated issued a "Statement As To Full Cost Of Repair Or Replacement."

48.     The February 8, 2019, statement included the following:

|  | Type of Property Involved In Claim | | | |
|---|---|---|---|---|
| Check box to work calculations. | ☒ Loc 2-1 Building Truck stop | ☐ Loc 2-2 Buidling Restaurant | ☐ | ☐ |
| 1. Full Amount of Insurance applicable to the property for which claim is presented was | $3,961,000.00 | $3,961,000.00 | | |
| 2. Full Replacement Cost of the said property at the time of the loss was | | | | |
| 3. The Full Cost of Repair or Replacement is | $1,829.23 | $17,435.70 | | |
| 4. Applicable Depreciation is | $648.57 | $6,381.00 | | |
| 5. Actual Cash Value loss is (Line 3 minus Line 4) | $1,180.66 | $11,054.70 | | |
| 6. Less deductibles and/or participation by the insured | | $50,000.00 | | |
| 7. Actual Cash Value Claim is (Line 5 minus Line 6) | $1,180.66 | $6,054.70 | | |
| 8. Supplemental Claim, to be filed in accordance with the terms and conditions of the Replacement Cost Coverage within 180 days from date of loss as shown above, will not exceed (This figure will be that portion of the amounts shown on Lines 4 and 6 which is recoverable) | $648.57 | $6,381.00 | | |

| Insured | | Date | |
|---|---|---|---|
| Adjuster | Chris Hillbrand | Date | 02/08/2019 |

## August Claim: Defendant's First "Current Payment Summary"

49.     Federated issued a "Current Payment Summary," dated February 8, 2019, related to the August Claim, which included the following post-reinspection amounts:

- RCV: $23,118.07

- Additional Payment: $12,235.36.

50.     On or about February 8, 2019, the HVAC estimate was provided to Defendant by HVACi. The estimate stated, in pertinent part, that the claim number it was given to be associated with the claim was the *June Claim (No. 446798)*, and the "primary cause of loss to the 9 HVAC systems is Hail," with an RCV value of $31,453.84.

51.     The HVAC value set forth above is an unreasonable underestimation of almost $25,000.

52.     The price to replace and/or repair the damaged HVAC systems was $55,620.00.

53.     Two of the nine HVAC systems, identified by HCAVi as systems No. 6 and 7, were not included in the estimate because they were not connected at the time of the inspection. Federated and/or its agents, including HVACi, made no determination as to whether these systems were in working order prior to the Claims.

54.     Before determining whether disconnected HVAC systems should be included in an estimate, it should be determined whether the systems were likely in working condition.

55.     It is common and reasonable in commercial buildings to have additional HVAC systems available, yet not connected, in case they are immediately necessary in the future.

56.     Neither Federated nor its agents, including HCAVi, made any determination that the above-mentioned disconnected HVAC systems were "not maintained," not in "workable condition," "obsolete," "outdated," or "not being used."

57.     Indeed, as stated above, it is common in a commercial setting to have extra HVAC systems available to be connected in the event they are needed and thus are not the equivalent of "not being used." Rather, they were being *used* as the immediate back-up systems.

58.     On or about March 18, 2019, Plaintiff provided information to Defendant regarding the realistic pricing related to the HVAC systems, including bids and supporting memos. Defendant disregarded Plaintiff's information in favor of its own unrealistic and self-serving investigation and information regarding the HVAC systems, and refused to change the valuation.

59.     CJ determined that the reasonable RCV value to restore the Property was $531,944.18.

60.     CJ was unable to begin the restoration project based upon the ACV valuation provided by Defendant.

61.     On or about April 3, 2019, Federated sent an email related to the June Claim to

Plaintiff stating, in pertinent part, as follows:

> Thanks for the call yesterday on this loss. . .
>
> We have received the attached estimates from CJ Restoration and we are proceeding with our review of the estimates. Ron Todd is reviewing the CJ Restoration bid to compare the differences. I did note that [CJ] ha[s] included the built up roof in their estimate but as previously noted, the test results found not hail damage to this roof section. We will be visiting with them on the need to have that included in the bid as well as other items once we finalize the review of the estimate.
>
> I spoke to KTK Canopies yesterday and we are finalizing our review of their bid. The diesel canopy bid includes additional support beams and purlins which is apparently to meet wind and snow load codes in your area. We are checking into pricing of the repairs and code upgrade requirements on the canopy repairs. . .
>
> Federated has already paid you the Actual Cash Value damage amount for the HVAC repairs for the pricing back in February and would not be able to consider supplemental amounts for price increases for delaying repairs.
>
> Once we finalize our review of the bids, we will provide you with our intentions with this loss.

62.     On or about June 7, 2019, Federated sent correspondence to Plaintiff stating, in

pertinent part, as follows:

> We have not allowed additional Profit and Overhead for the canopy repairs and HVAC work since this work will be completed other contractors that will require minimal contact and coordination with CJ Restoration. . .
>
> CJ Restoration also inquired about the hail damage to the two HVAC units on the restaurant building that are disconnected and not operating. CJ Restoration has stated that you intend to repair/replace the two disconnected York units and will be making a claim for those damages.
>
> We have reviewed your coverage for those units and determined that the nonoperational HVAC condensing units did show signs of hail damage but as nonoperational units that were not serving a purpose they only possess a salvage value.

**August Claim: Defendant's Second "Current Payment Summary"**

63.     Federated issued another, "Current Payment Summary," related to the August Claim, dated June 10, 2019, which includes the following:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Insured: | Dhaliwal Ventures Inc | | | | | | **Current Payment Summary** | | |
| Today's Date: | 6/10/2019 | | | | | | Loss Number | | 471862 |
| Date of Loss: | 8/6/2018 | | | | | | Gross Payment Amount* | | $2,447.16 |
| Cause of Loss: | Hail damage | | | | | | - Deductible | | |
| Location of Loss: | Loc 2-1 & 2-2 Fountain, CO | | | | | | - Retention | | |
| Policy No./Type: | CPP # 9279972 | | | | | | Net Loss/This Payment: | | $2,447.16 |

| Line | Description | Incurred Cost | Replacement Cost | Depreciation | Actual Cash Value | Line Total | Total Item | Payment Amount |
|---|---|---|---|---|---|---|---|---|
| # | **Loc 2-1 Truck Stop/C-store  1101-1103 S Santa Fe** **CP-F-15 $3,931,000.00 Blanket limit** | | | | | | | |
| 1 | 1101 S Santa Fe - No Additional damage found since 06/14/2018 hail loss # 446798 | | | | | | | |
| 2 | 1103 S Santa Fe- Additional damages to building discovered after prior loss inspection | | | | | | | |
| 3 | per Ascent Claims estimate | | $2,195.11 | $778.29 | $1,416.82 | | | $236.16 |
| 4 | | | | | | | | |
| 5 | | | | | | | | |
| 6 | | | | | | | | |
| 7 | | | | | | | | |
| 8 | | | | | | | | |
| | **Totals** | | **$2,195.11** | **$778.29** | **$1,416.82** | | **$1,416.82** | |
| # | **Loc 2-2 Restaurant  1105 S Santa Fe** **CP-F-15 $3,931,000.00 Blanket limit** | | | | | | | |
| 1 | 1105 S Santa Fe- Additional damage to building discovered after prior loss inspection | | | | | | | |
| 2 | per Ascent Claims estimate | | $18,813.77 | $6,840.27 | $11,973.50 | | | $1,995.62 |
| 3 | | | | | | | | |
| 4 | Shed damages | | $728.85 | $247.81 | $481.04 | | | $80.18 |
| 5 | High Rise sign damages | | $1,380.34 | $569.18 | $811.16 | | | $135.20 |
| 6 | | | | | | | | |
| 7 | | | | | | | | |
| 8 | | | | | | | | |
| | **Totals** | | **$20,922.96** | **$7,657.26** | **$13,265.70** | | **$13,265.70** | |
| | **Grand Totals** | | **$23,118.07** | **$8,435.55** | **$14,682.52** | | | |
| | | | | | | *Gross Payment Amount - This Payment: | | **$2,447.16** |

- No Additional damage found [to convenience store] since 06/14/2018 hail loss # 446798 [June Claim]

- RCV:  $23,118.07

- Additional damage to [restaurant] discovered after prior loss inspection: $2,447.16

**August Claim: Defendant's "Statement As To Full Cost Of Repair Or Replacement"**

64.     On or about June 10, 2019, Federated issued a "Statement As To Full Cost Of Repair Or Replacement" that included the following:

Statement As To Full Cost Of Repair Or Replacement
Under The Replacement Cost Coverage
Subject To The Terms And Conditions Of This Policy

| | |
|---|---|
| To: Federated Mutual Insurance Company | Loss Number 471862 - 1 |
| | Date of Loss 08/06/2018 |
| | Cause of Loss Hail |
| | Policy No. 9279972 |

Insured  DHALIWAL VENTURES INC
Policy Address  PO BOX 186
BIG SPRINGS, NE 69122-0186
Location of Loss  1101-1105 S SANTA FE AVE FOUNTAIN, CO

| | Type of Property Involved In Claim | | | |
|---|---|---|---|---|
| Check box to work calculations. | ☒ Loc 2-1 Building Truck stop | ☐ Loc 2-2 Buiding Restaurant | ☐ | ☐ |
| 1. Full Amount of Insurance applicable to the property for which claim is presented was | $3,961,000.00 | $3,961,000.00 | | |
| 2. Full Replacement Cost of the said property at the time of the loss was | | | | |
| 3. The Full Cost of Repair or Replacement is | $2,195.11 | $20,922.96 | | |
| 4. Applicable Depreciation is | $778.29 | $7,657.26 | | |
| 5. Actual Cash Value loss is (Line 3 minus Line 4) | $1,416.82 | $11,054.70 | | |
| 6. Less deductibles and/or participation by the insured | | $5,000.00 | | |
| 7. Actual Cash Value Claim is (Line 5 minus Line 6) | $1,416.82 | $6,054.70 | | |
| 8. Supplemental Claim, to be filed in accordance with the terms and conditions of the Replacement Cost Coverage within 180 days from date of loss as shown above, will not exceed (This figure will be that portion of the amounts shown on Lines 4 and 8 which is recoverable) | $778.29 | $7,657.26 | | |

Insured _____  Date _____
Adjuster  Chris Hillbrand  Date 06/10/2019

## Plaintiff Retains Independent Adjuster

65.     Plaintiff retained Premier Claims, an independent adjusting firm, on or about July 5, 2019.

66.     At Plaintiff and/or its agents request, on or about October 8, 2019, professional engineers from Western Engineering and Research Corporation ("Western") conducted a site visit and analysis and prepared a corresponding report, dated October 22, 2019, related to the Property.

67.     Western's conclusions included, but are not limited to, that the hailstorms that are the subject of the Claims:

- caused damage to the Exxon store and Biscuits Café including dents in HVA housings, flattening of evaporator fins, denting of parapet caps and other metal, damage to flashings, and other items;

- HVAC units on the Exxon store and Biscuits Café are to be replaced;

- Several units on Biscuits Café and one unit on the Exxon Store are supported on sleeper 4x4s bearing directly on the built-up roof. This support method is not recommended by industry standards including the National Roofing Contractors Association (NRCA). These units should be reset on equipment support curbs, such as described in the attached NRCA detail BUR-9, *Equipment Support Curb*;

- At the Exxon Store, apparent hail damage was observed to the southeast-facing parapet wall base flashing as well on other parapets;

- At Biscuits Café, all parapet flashings were deteriorated and tattered, and should be replaced; and

- It is likely that impacts from the June and August 2018 hailstorms dislodged or fractured parapet flashing on all elevations. Repair or replacement of these damaged flashings, and repairs of other flashings, should be conducted per *The National Roofing Contractors Association (NRCA), Repair Manual for Low-Slope Membrane Roof Systems*.

**Plaintiff's Estimate is $587,064.23 RCV for the Claims**

68. On or about October 15, 2019, Premier Claims, utilizing the engineering report by Western, determined that the total amount to fully restore the Property related to the damage caused by the storms was an RCV amount of **$587,064.23.**

69.     On or about October 24, 2019, Defendant and/or its agents received Premier's estimate for restoring the entire Property; in response, Defendant, through Ascent, provided an estimate for the August Claim only, and it is annotated with items included on the Premier estimate, and not included in the Defendant's estimate, differences in scope, and disagreements regarding Plaintiff's and Defendant's estimates.

**Defendant Denies Plaintiff's Request for Appraisal**

70.     Based in part on the October 24, 2019, annotated estimate, there was a disagreement as to the value of the property or the amount of the loss.

71.     The Policy's Appraisal Clause states as follows:

> **2. Appraisal**
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.** Pay its chosen appraiser; and
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

72.     On or after October 24, 2019, Plaintiff and Defendant disagreed "on the value of the property or the amount of the loss."

73.     As evidence of the disagreement is the following, which includes, but is not limited to, the significant difference between the Plaintiff's estimate as presented through Premier, and the Defendant's numerous estimates, beginning on February 8, 2019 (Defendant's First "Current Payment Summary"), which, even combined, were significantly lower than Plaintiff's estimate.

74.     Moreover, on or about October 31, 2019, Plaintiff, by letter included below, indicated it disagreed with the amount Defendant calculated as the amount of the losses related to the August Claim:

> To Whom It May Concern,
>
> This letter is to notify you that we disagree with the amount of loss you have calculated on the above referenced claim. As a result of our disagreement, we are hereby invoking the appraisal clause of our policy contract to set the amount of loss.

75.     Accordingly, on October 31, 2019, Plaintiff invoked appraisal, in writing, pursuant to the terms of the Policy, appointing Taylor Bezek, from C3 Group, to be the appraiser.

76.     Thereafter, Plaintiff clarified that the invocation of appraisal is to the second claim, that is, the August Claim only. This is demonstrated by a follow up letter sent by Ascent to Federated, as follows:

> **From:** ASCENT CLAIM SERVICE <ron.todd@ascentclaims.com>
> **Sent:** Monday, December 2, 2019 3:57 PM
> **To:** P&C Claims E-mail <PCClaims@fedins.com>
> **Cc:** Hillbrand, Chris W. <CWHillbrand@fedins.com>
> **Subject:** Fwd: Claim # 471862; Claim #446798
>
> ⚠ [System Notification: This e-mail is from an *EXTERNAL* source. Please use caution when clicking on links or opening attachments from an unknown or suspicious origin.]
>
> Chris,
>
> As discussed, the appraisal demand letter is attached. Noted this applies for the second claim only.
>
> Thank you,
>
> Ron Todd
> 303-810-1183

77.     Contrary to the Policy, Defendant did not designate an appraiser or engage in appraisal despite Plaintiff's valid appraisal demand, which adhered to the Policy's appraisal requirements, including all conditions precedent.

**Plaintiff Requests Third Inspection**

78.     Plaintiff and/or its agents requested another inspection.

79.     By email, on or about February 2, 2020, Defendant stated that it is was "agreeable to attend another inspection."

80.     Upon information and belief, the re-inspection afforded an additional **$13,346.08** in value related to the June Claim.

81.     Accordingly, Defendant clearly underpaid the value of the June Claim, likely by hundreds of thousands of dollars, but, at the very least, $13,346.08.

82.     Between approximately February and April 2020, Defendant attempted to "settle" the Claims. However, Defendant undervalued the Claims by, among other things, making "settlement" impossible in the sense that Plaintiff would not be able to repair the Property with the amounts offered by Defendant.

83.     On or about May 6, 2020, CJ Restoration completed work on the canopies for a total amount of **$224,847.60** and sent a certificate of completion to Defendant.

84.     Without evidence to reasonably substantiate its decision, Defendant disproportionately added more value to the June Claim, despite the overwhelming evidence that the August storm was more severe and caused significantly more damage.

85.     Further, Defendant's calculation of the roofing that it deemed needed replacing contradicted code requirements. Specifically, according to applicable code, because more than 25% of the roofing systems must be replaced, the entire roof must be replaced.

86.     This notion was verified by the Pikes Peak Regional Building Department, which

stated as follows, by email, to Premier:

From: **Roger Lovell** <roger@pprbd.org>
Date: Thu, Apr 23, 2020 at 8:37 AM
Subject: RE: New Inquiry from PPRBD.org
To: dlangfeldt@premier-claims.com <dlangfeldt@premier-claims.com>

Good morning Dana

Please see section RBC104.4 of the 2017 PPRBC, link below.  In summary, not more than 25% of the roof may be replaced in a 12 month period without bringing the entire roof into compliance.

https://www.pprbd.org/Downloads/Codes/2017%20PPRBC%20V1.0%202nd%20PrintingFINAL3protected.pdf

Thank you

**Roger Lovell P.E.**
Regional Building Official
Pikes Peak Regional Building Department
**O:** 719-327-2994      **C:** 719-491-3357
**E:** Roger@pprbd.org  **W:** pprbd.org



## Storm Damage is a Covered Loss Under the Policy

87.     A contract of insurance existed between Federated and Dhaliwal; namely, the

Policy.

88.     The Policy provides replacement cost coverage, which, according to Federated,

pays the cost of repair or replacement, without a deduction for deprecation, subject to the Policy's

limit of coverage.

89.     The Policy requires Federated to pay replacement cost benefits for covered losses.

90.     The Policy requires Dhaliwal to pay insurance premiums in exchange for

replacement cost coverage, which Dhaliwal did.

91.     Hail damage is a covered loss under the Policy.

92.     The weather events and the damage caused by such weather events, both of which

are described above, constitute covered losses under the Policy.

**Defendant's Actions Were Unreasonable**

93.     Defendant conducted a self-serving, inadequate, and unreasonable investigation and adjustment of the damages to the Property related to the Claims. As evidence, at least in part, is the fact that, given the intensity, damage caused, size of storm, length, and size of hail, the June and August storms were "historic" in nature and Defendant's estimates did not reflect what would be necessary to restore a property that underwent such storms.

94.     When Plaintiff presented Defendant with information regarding its estimates, including for example, the HVAC systems, *supra*, it summarily disregarded its own insured's information in favor of the information brought to it by its hired, third-party adjusting firm.

95.     After a reinspection requested by the Plaintiff, Defendant admitted that it underpaid the June Claim by at least approximately $13,000.

96.     Contrary to the Policy, Defendant unreasonably refused to move forward with appraisal, despite a clear disagreement and Plaintiff having satisfied all conditions precedent.

97.     Ascent's/Federated's estimates, which indicated the amount Federated was willing to pay in replacement cost benefits, did not reflect the actual, necessary, and reasonable cost of repair or replacement to the Property for covered losses.

98.     Upon information and belief, Federated's actual cash value payment to Dhaliwal was based on these inadequate and unreasonable estimates.

99.     When Defendant supplemented the value based upon a re-inspection after the August storm, the value added was nuisance, especially when compared to the size of the storm. By example, Defendant determined that the August storm did not cause *any* additional damage to the convenience store.

100.     Defendant unreasonably undervalued the damage to the Property, including the roofing systems and HVAC systems.

101.     Defendant violated code in its estimates, including that when more than 25% of the roofing system must be replaced — as was the case here — the entire roofing system must be replaced.

102.     Defendant unreasonably failed to include overhead and profit in accord with industry standards.

103.     Federated did not pay what the Policy required, including because Federated determined, without a reasonable basis, that certain hail-damaged parts of the Property were pre-existing, and caused by wear and tear, among other things, when there was in fact hail-damage caused during the Policy period and covered by the Policy that required repair or replacement.

**PLAINTIFF'S CLAIM FOR RELIEF**
**(VIOLATION OF C.R.S. 10-3-1115 AND 1116)**

104.     Plaintiff incorporates all other paragraphs as if fully set forth herein.

105.     At all times pertinent hereto, the following statute of the state of Colorado was in effect:

**§ 10-3-1115. Improper denial of claims—prohibited—definitions-- severability**

(1)(a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

106.     C.R.S. § 10-3-1116 provides a remedy for such denial or delay of payments in the form of "reasonable attorney fees and court costs and two times the covered benefit."

107.     Among other things, Federated unreasonably delayed or denied payment of insurance benefits owed to Dhaliwal by including, but not limited to:

a.      failing to include in its estimate actual, necessary, and reasonable funds to repair and/or replace damaged portions of the Property caused by the weather events described above;

b.      conducting an unreasonable investigation that resulted in the unreasonable estimates described above; and

c.      unreasonably relying on its engineer's findings, which cherry-picked and ignored hail data, and did not consider the fact that the Property only had minor leaks before the June storm to the extent that the tiles inside the restaurant were completely replaced and started leaking significantly soon afterward.

108.    Federated unreasonably denied and delayed payment to Dhaliwal in violation of C.R.S. § 10-3-1115(a).

109.    Federated is subject to the provisions of C.R.S. § 10-3-1116(1) for "reasonable attorney fees and court costs and two the covered benefit," in addition to damages claimed elsewhere in this Complaint.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for damages against Federated as follows:

a.      Reasonable attorney fees and court costs and two times the covered benefit under C.R.S. § 10-3-1116(1);

b.      An award of all interest, including pre- and post-judgment interest;

c.      Costs and expenses; and

d.      Such other and further relief as this Court may deem just, equitable or proper.

**A JURY IS DEMANDED AS TO ALL ISSUES HEREIN.**

Respectfully submitted February 5, 2021.

By:     */s/ Jonathan S. Sar*
Richard Daly
John Scott Black
Sean B. Leventhal
Jonathan S. Sar
Daly & Black, P.C.
2211 Norfolk Street, Suite 800
Houston TX 77098
Phone Number: 713-655-1405
Fax Number: 713-655-1587
Email: rdaly@dalyblack.com
        jblack@dalyblack.com
        sleventhal@dalyblack.com
        jsar@dalyblack.com
        ecfs@dalyblack.com
*Attorneys for Plaintiff*

**Plaintiff's Address:**
1101-055 S. Santa Fe Ave.
Fountain, CO. 80817